Good morning, Justices. May it please the Court. I am Marcus B. Sierra. I represent the petitioner in this case, Mr. Tineimalo Adkins. Your Honor, this case involves a statute which has undergone a lot of evolution in the last year and a half. That's an understatement. Unfortunately for my client, he was sentenced approximately eight months before this evolution started to take place. Anyway, what happened is it resulted in a 300% increase in his sentence, meaning that the lower end of his range would have been 70 months had a new amendment, which was Amendment 798, had that amendment been active and valid during his sentencing. If he had been sentenced one year later, he would have been not a career offender. I agree with you that being on the unfortunate side of the line raises all the legal issues that we have here. We have it not just in this case, but as you know from other cases that are coming before the Court. It seems to me the question you need to answer, and particularly looking at Welch and what the Supreme Court ruled with respect to what Johnson did, I'm hard-pressed to completely understand how you can argue that it was a clarifying change, not a substantive one, when Welch said that Johnson was a substantive change. Perhaps you can tell us where we either have to diverge from the Supreme Court for some grounded reason or why, unfortunately, your client just ends up on the wrong side of the line time-wise. Right. Well, I think that part of the difference here or distinction is that they're subject to two different tests. Under the test for whether or not an amendment should be applied retroactively, there's those three factors we're all familiar with. The first two involve whether the Commission actually put it on their list of retroactive amendments. Secondly, whether or not they... That doesn't come out well for you. True. And I have an explanation for that, Your Honors. Back then when they were talking about this amendment, which occurred only six... Submitted to Congress six months after Johnson was decided, Johnson prompted this whole process. Had that decision not come down, it's doubtful that we'd be here today. But in any event, when they were considering whether to make it retroactive, Johnson was already in effect and had already started being applied to the residual clause in the Census and Guidelines. There was almost a consensus among the circuits that that should be done. It wasn't just the courts that were deciding this. It was also the various litigants. Of course, the defense was on the side of, yes, it should be retroactive. But the prosecutors were also on that side, too, which is very unusual for both parties to be saying yes. No, I agree. We had a number of cases, actually, which were joint requests for remand under the Guidelines, which, of course, later changed as a result of Welch. I could see that the commission was in a position where they're thinking, well, should we make it retroactive? Does it need to be retroactive? Because that's going to involve a lot of analysis on our part to figure out what the impact's going to be. And that's going to involve a long-term study. I think the more important thing on their mind was let's get this thing done first, fast. And they did get it done fast, within six months. But at that time, as they were considering whether to make it retroactive, they knew that Johnson had already invalidated the clause, the residual clause in the Sentencing Guidelines, in accordance with these holdings that were coming out from all the different circuits. I believe it was only the 11th Circuit and the 5th Circuit which disagreed, and some circuits were neutral. But the majority, I would say in the consensus of the courts and the litigants for that, Johnson was retroactive. And... Well, even if we were to accept your explanation that they didn't want to take the time for a study, they said that the striking was a matter of policy. And if that's true, then that would cut against an argument that it was clarifying as opposed to some substantive change. I agree. I looked at that word and I wondered, what do they mean by policy? It didn't really say. But when you think about, when I think about the fact that they're talking about what Johnson had done, Johnson had identified language, which was identical to the language in the residual clause that we're talking about today, as being shapeless, formless, a black hole, indeterminable, a violation of the Constitution. It was so bad that it was a violation that made this particular clause void. And you can see that the Commission would think, well, it's our policy not to continue on with provisions in our sentencing guidelines, which the courts have already held to be unconstitutional. It would not make sense for us to keep this provision in there. Well, let's say we called it a wash on number one. Okay. And the first point as to what you look at under the possible factors. Let's just say you can't figure it out from the way it came about. What are your other arguments? Well, it didn't really change the law. And my argument is the state of the law at the time that they made this amendment was that provision, the residual clause, was void for vagueness. That's what courts were holding. They were taking Johnson's ruling and they were applying it to the sentencing provisions. So they weren't really changing the law. They were just going along with what the rulings were. They were actually doing something very consistent with what the law was, state of the law was at that time. It wasn't until Beckles that everything changed. And I think it's pretty clear that Beckles is unexpected. Everyone expected the opposite result. Also, as I understand it, the guidelines are not subject to void for vagueness challenges post-Beckles. But it appeared to me that the commission primarily removed the residual clause because of confusion and inconsistent application among the federal courts referencing the same concerns that were referenced in Johnson. Thank you. Why should we find that the residual clause does not apply to Atkins convictions post-Beckles? Post-Beckles? Because Beckles didn't do the same thing that the amendment did with regard to curing or resolving splits in the circuits. And I would argue that the intent of the commission was at least in part to resolve a split in the circuits because they said so. They spent the entire two paragraphs under the reasons for amendment subtitled residual clause. Those whole two paragraphs are spent talking about comparing the holdings in the 11th and 5th circuit with a holding in the 8th circuit and 3rd, 6th, and 10th circuit. I mean, if they compare this with that, that's the litigation that they're talking about trying to alleviate is this litigation which is producing inconsistent results, disparate sentences, and is basically unfair to- I'm sorry, you're talking about which decision now? Sorry, my mouth is dry. I'm talking about the guidelines and the reasons for the amendment. I'm talking about the document that came out entitled Amendment to Sentencing Guidelines. The Sentencing Commission's own- Yeah, their comments to me kind of tell us what they're intending to do. And in the cases I've read, the intent of the commission is important and also the effect, the actual effect. And so I would say that under the residual clause subtitle in the comments by the commission, all they talk about is resolving the split between the circuits. And in fact, that's what it did. It resolved two splits, actually. The first split was whether Johnson applies to the residual clause in the Sentencing Guidelines. When they took out the residual clause, no one had to argue about that anymore. The second split was how to apply the residual clause in the Sentencing Guidelines. That is the split and difficulty that the Johnson court struggled with and resolved by finding that the residual clause in the ACCA, the statutory residual clause, was invalid or void. Thank you. Your time is about up, but I had one question. Assuming the residual clause is still valid on appeal, why doesn't unlawful imprisonment fall under the residual clause? Because the residual clause, like the test for the enumerated offenses and the force clause, are all subject to the categorical analysis, which was set forth in Taylor. That's my understanding. And if you apply the categorical analysis to the offense of imprisonment, false imprisonment, a violation of the Hawaii statute, it does not match up with the generic version of false imprisonment because false imprisonment in Hawaii can include a lot of things, which I think I pointed out in my memo. Thank you, counsel. That's an adequate explanation. Thank you. Good morning, Your Honors. May it please the Court, Jill Otake for the United States. I'll address first the matter of retroactivity of Amendment 798, and Your Honors are correct that Welch held that Johnson was a substantive change, and I think that the case law that exists at this point from the First Circuit and the Eleventh Circuit strongly suggests that, indeed, the Amendment 798 was not meant to be retroactive. It's sort of surprising to me the government didn't cite Welch in its brief. I apologize for that, Your Honor. That is a major Supreme Court case directly on point with the same Johnson residual clause. Neither did the other side. So, you know, we're looking at that plus a couple of other cases that weren't cited at all. Has the government taken a contrary position in any of the circuits? Not that I'm aware of, Your Honor. We have consulted with other offices within the Ninth Circuit, and everybody within the Ninth Circuit who we've consulted with has indicated that we were taking this position. And, Your Honor, the three questions that the Court raised are all obviously answered in the negative because it was undoubtedly a substantive change. The removal of the residual clause from the career offender language had to be a substantive change. It can't be, as Mr. Sierra attempts to argue, a clarification. I understand his point that he's saying, well, it clarified an issue for litigation, but that's not the test. The test is whether the amendment is listed in the list of retroactive amendments, which it is not, whether the commission characterized it as a clarification, which it did not, and whether the amendment resolves the circuit conflict. Now, arguably, that does weigh somewhat in Mr. Adkin's favor, but what's clear, based on both the language of the amendment itself and the policy statements made, it's clear that what was intended was that this is going to be a policy change, not a clarification. Counsel, then why did the commission, in its new definition of forcible sex offense, why shouldn't it be retroactive? Didn't the commission state that it wanted to, quote, make clear the definition of sexual abuse of a minor under 4B1.1? Your Honor, the reason why the change to forcible sex offense is not a clarification but is, in fact, a substantive change is because it actually does substantively change the definition. Previously, under Ninth Circuit case law, it was clear that the definition included acts such as one that Mr. Adkins committed, basically a sexual contact of a child without the use of force under the age of 14. Ultimately, Your Honor, the change in the definition of the crime cannot be a clarification. Why would they use the word make clear? I agree with Your Honor that that suggests that the commission viewed it as a clarification in some way. However, the amendment, again, is not listed in the list of retroactive amendments. And if you look at the language of the commission itself that I submitted in my brief, the commission suggests that it was a substantive change characterizing it in context as a new definition because it's a new definition that has to be a different definition, therefore a substantive and not a clarification. If we were to disagree with you and hold that this has retroactive application, what would be the effect of that? Would that mean that cases like this defendants that are on direct appeal would get the benefit of that change? Would it mean that there could be collateral attacks on sentences as well? What's the government's position? I believe that's true, Your Honor. And, in fact, I think that's part of why the commission in the policy statement talked about how it would be – they didn't say this explicitly, but it would open another Pandora's box if these changes were to be retroactive. The commission's statement regarding this was that the retroactivity question was basically too murky to address. And the reality is it is undoubtedly going to open up a whole new field of litigation regarding this very question, which is exactly what the amendment was meant to prevent, was meant to alleviate, was the litigation. Well, it's an odd thing because the sentencing commission was making this policy change in advance of knowing how things were going to sort out. So, apropos of your colleague's argument, in effect they were trying to get out ahead and just resolve the circuit split, weren't they? It's just they may have been resolving the wrong circuit split. So, that would counsel under these three criteria to tip toward retroactivity. So, I guess in a more precise point, my question to you is can they be making a policy change at the same time they're trying to wrestle with a circuit split on the application of the residual clause? I think that the answer to that is yes, but in this case what's very clear is that it's rooted in a policy change more than anything else. If you look at the language of the commission, it repeatedly talks about how the fact that they took in public comment, how they had all this research done on the various recidivism rates, on the likelihood that violence is used in particular offenses such as burglary. The reality is that while yes, a policy change can resolve a circuit conflict, undoubtedly here the policy change is the primary force behind this amendment. The fact that they're referring to Johnson and the policy issues raised in Johnson strongly supports that point. This is all a little strange. I take it they could have said, they could have made this retroactive expressly even if it's a policy change and they've decided that they're going to shift gears. They could say, but we're going to make it retroactive anyway. I take it in your brief you talk about Judge Saris, who was the chairman of the Sentencing Commission, said that we did consider that. Right. You would say that they considered making it retroactive but didn't, so it remained a substantive change that's not retroactive. That's where we are. Right. That's the government's position, Your Honor. To me, the most important factor here is the fact that we know that the Sentencing Commission considered it. They've told us that and they opted not to make it retroactive. It's not included in the list of retroactive amendments and I think there was a policy reason behind that itself. I mean, that's what is said in the public statement is that we considered it. Although these words weren't used, it would open a Pandora's box and create another morass of litigation, which is exactly what we're trying to avoid as the Sentencing Commission. I think for that reason, the conclusion has to be that these amendments were not intended to be retroactive. Do you know of any situation where the Sentencing Commission, faced with this problem that these studies that they undertake are long-term and take a long time, where they've provisionally given retroactive effect to one of their amendments and then later revoked that? Do you know of a situation like that? I'm not familiar with a situation like that, Your Honor, but I honestly have not looked to see if they've done that. So it's possible, but I'm not aware of any. But you said earlier that you'd spoken to other U.S. attorneys in the circuit. Have you spoken to Washington about this? Yes, Your Honor. Well, I should clarify, I have not personally spoken with the Western District of Washington. No, no, I don't mean Western District of Washington. I'm talking about the one on the other coast. I believe that our appellate chief did reach out to them, and I don't believe that they offered a contrary position to the one that we're taking now. Counsel, I just want to indicate one thing that's bothering me. It seems to me paradoxical to use the Teague test to determine whether a guideline amendment creates a new substantive constitutional role when the court in Beckles stated the guidelines are not amenable to constitutional challenge because they are merely advisory. What is your response to that? I think that's a good point, Your Honor. And I will say that I believe Beckles was correctly decided. Let me start off by saying that. And whether it was or not, we're all bound by it, right? Right, right. Whether it was or not, we're all bound by it. And so I understand Your Honor's concern, but I think that that's the state of the law now in terms of application of Teague. I don't think that changes anything with regard to the status of how we evaluate these questions. Thank you. Well, we could use the Teague test even if it's not a constitutional question, correct? I mean, it's a factor test, correct? That's true. That's true. Thank you. Thank you, Your Honor. You've used up all your time, but she's had a number of points made, so I'd like to give you a minute for a rebuttal if you'd like. Your Honor, on the question of whether the first two factors are so important compared to the third factor in the test, the cases that I've looked at, including Sanders, Morgan, Christensen, and Butler, all involve situations where the first two factors didn't, the commission did not indicate that it was retroactive or that that's what they wanted to do by putting it on the list. Yet the courts in those cases still went forward and said it's the third factor which is most prominent, and that is whether or not it has resolved the circuit split, and that whether the commission decides that they want to say it's clarifying or retroactive does not control what we decide. We are the ones that decide that issue. They ignored the fact that the commission didn't say anything about retroactivity for those amendments. That was Christensen and Butler, Morgan and Sanders. Those are the main cases which talk about that three-part test. Thank you. I thank both counsel for your argument this morning. It's a very interesting and novel question, certainly in this circuit, and I appreciate the briefing and argument. United States v. Atkins is submitted.
judges: Schroeder, D.W. Nelson, McKeown